Case No. 24-3181 Clark v. Geico This is the Court. Wesley Mead for the Clark Appellants. Your Honors, in this case, the plain language of the statute, New York Civil Rights Law, Section 50, I'm sorry, Section 70B, should have prevailed, and it did not. The statute – Can I just say what I'm a little puzzled by? Yes, Your Honor. Everybody seems to think that the case turns on the import of including but not limited to, as if the question is whether the statute applies to all medical care or only reproductive health care, right? But even if it applies to all medical care or we're talking about reproductive health care, it's got to be the case that the suit that the defendant in this action would be bringing is trying to impose liability for the provision of the medical care and not for something else that's unlawful, right? So let's – what would it take for you to prevail on your claim under the statute? Let's say you went to trial and the evidence showed that Geico really wasn't concerned about stopping the provision of medical care. They really were bringing a bona fide lawsuit about insurance fraud. You'd have to lose this claim, right? Or you're saying just because there's allegations about medical care, in any claim, automatically I win? Not necessarily, Judge, because how the statute reads, the two elements are – that we – what we set forth in our brief are met. The damages relate to the unlawful interference. The two elements are that there are allegations against a person involving the provision of medical care. Yes. And what's the other element? The other element is that it triggered the lawsuit, which is the offense of lawsuit. So it just can't be that – as long as you mention allegations involving medical care. So let's say there's no dispute that somebody was providing reproductive health services. So a doctor is providing an abortion, but then when the patient comes in to receive the abortion, he also just kind of gratuitously – Cuts off an arm. Yes, cuts off her arm. And she sues to say, you should not have cut off my arm, and so damages. It can't possibly be because the complaint mentions that she was getting abortion services, the doctor is immune from liability for cutting off her arm. That's how the statute works? No, Judge, and that's – and that's – that's why – So it has to be the case that – Maliciousness. The initial lawsuit is trying to impose liability for the provision of the medical care that this statute is trying to protect, right, and not something else. Well, I would disagree with Your Honor, but I think even if the – even if I was correct  But you disagree with – It's still prevailed. Is that hypothetical? Because – The doctor is entitled to cut off her arm, and he'd be protected by this statute. That – Maybe we can ask the question a different way. I really would like the answer to Judge Menasche's question. What are the limits that you think exist in the law that preclude a doctor who cuts off the arm in the course of providing an abortion from being immune? Well, Judge, I think that we set forth in a brief the issues of negligence, because I think they rely heavily on the malpractice analogy. We think that the wantonness and malicious actions of the – of the – whoever is unlawfully interfering with the doctor's providing of care would be the – Okay. So how does your – I'm going to ask the question a different way. Okay. What is your interpretation? What is the legal principle that you are asking us to adopt that would include your suit but exclude a medical malpractice suit? Well, Judge, the – What are the words that you think incorporate that? Well, I certainly – I don't think that this Court's – I don't think the Court should do that on a – there's no case as of yet, aside from this one, interpreting the statute at all. And the legislature specifically went into the potential for wrongful death actions being applied in this case. And that's – Well, wrongful death is better designed to prevent the provision of abortion services, right? If you sue for wrongful death over the death of the child, the New York legislature thinks that that's a way to interfere with reproductive health services, and so if you're trying to impose liability for that – so that would be a case where the liability is based on the provision of what the statute considers reproductive health care. But if, in fact, it's a wrongful death action not because the doctor was providing an abortion, but because the doctor gratuitously killed the patient after providing an abortion, that would not be a permissible wrongful death action. Or do you think it would be? Because – I don't think – I don't think it would be, but I would say, Judge, under the statute, as it's written, as it's written right now and as the legislative history shows, the – the – what they were allowing for was the providing of medical care to – the interference with providing medical care to be actionable under civil rights actions. That's not right. It's not right. And that's – this is something that's puzzling me about the way that you've argued this. You've talked about the ways that it's impaired your client's ability to provide medical care. Right. This doesn't say you can't bring suits that have the consequence of impairing somebody's ability to provide medical care. It says you can't bring suits that result from the provision of medical care by someone. And – and looking at your complaint on its face, it alleges that suits have been brought based on billing for medical care. No. Your client doesn't care what – what services are provided. It's not just that. And the court of appeals on November 24th of this – in Geico v. Mazenberg, just based on the certified question here in the Second Circuit, just stated that the – the actions by the insurance companies in general which were – which were challenging based upon large – large part licensing issues, kickback schemes, things of that nature, things that are in this case and that are in Mazenberg were improper. They never should have been done. They were – they were for the DFF – for Department of Financial Services and the Board of Regents to decide, not the insurance companies unilaterally which has been done. So that's why the triggering – I call it the triggering action here was improper. And it did unlawfully interfere because those cases – the judge only touched upon two of the bases for the unlawful appearances. That was the EOs by the doctor – I'm sorry, the multiple EOs by the doctor, the – and the RICO action. The patients – we have approximately 50 patients or more that have been, you know, targeted by the – by the insurance company in this case. There is a multitude of other actions. I just want to understand how you're reading the statute. So it's true that the statute talks about how you have a claim when the defendant commences an action in which the allegations against the person involve accessing, providing, facilitating, or attempting to access, provide, or facilitate the medical care described in Subdivision 6. And I guess there is a reading of that provision that would say any complaint that mentions the provision of medical care would give rise to a claim under this and maybe even get damages for it. But isn't the more reasonable way to read that to say that the allegations against the person on which liability would be based in the other suit involve the provision of the medical care? Like it has to be that they're trying to impose the liability for the provision of care, not liability for some other unlawful thing that happened at the same time. I get – but I guess my interpretation of the original complaint is different than the current. That's why I asked. I understand that. I understand that your client has this argument that the insurance thing is a sham, that really GEICO really wants to stop him from providing medical care. And that's what the insurance – I get that. My question is if, in fact, it went to trial and we had evidence and whatever and it turned out that the evidence showed that GEICO's intent was not to prevent the provision of medical care, but they just wanted to prevent fraudulent billing, wouldn't you lose on the merits of this claim? I believe I might, Judge. But the problem is – well, yes, I believe you're probably correct. But in this case – So then whether you say the claim depends on whether it's plausible from the allegations that GEICO, in fact, doesn't care about the insurance fraud, but really wants to stop your client from providing medical care. Then we win. Because – If it's plausible. If it's plausible. Well, it is plausible because the court of appeals has just ruled. They just – they just – they just ruled – They didn't rule in your case. They didn't rule in our case, but they ruled that these actions where the – they're We're talking about 50 or more licensing violations that have – that are almost all these RICO actions. That it's, you know, throughout the Eastern District mostly because it's an unvetted district where there's no RICO case in requirement. But the actions were improper because they simply delve into and make – take issue with licensing issues, kickback issues, which should have been properly before the FS and the Board of Regents. This OPMC – the false OPMC complaints show the maliciousness that GEICO has targeted not just my client, but his patients, and they have prevented. And I didn't even get a chance to replead, Judge. I mean, because – The idea is that GEICO does not want patients in the Bronx to receive medical care from your client. That's what is really behind the lawsuits. They have targeted this doctor, Judge. And I should have been given the opportunity to show, even through an amended pleading – and I mentioned the court – Judge Block seems to show that – believe that this court should – the statute should be limited to endocrine and reproductive care, even though that's not what it says. And even though the – Well, I might say that. I mean, that's a different question. But it seems to me it's not obvious that that is the dispositive question, because even if you're providing reproductive care, if you do something illegal that's apart from that care, it seems that's not obvious to me that that is criminalized by the court. But – and that's why I bring up the GEICO-Maisenberg case, because it has not been shown to be anything that he's done to be unlawful at this point. Under that – I thought that GEICO v. Maisenberg held that the kinds of licensing violations or disciplinary violations that the insurance company relied on in denying care in those cases weren't proper bases to deny coverage. That's true. And I have this – I have the decision here. But, Judge, what I think the implication in that case is they should be going before DFS and the Board of Regents, not – and there's a full provision of law under Insurance Law 5108 and 5109 where they could be doing that. Nothing about that answers the question that I think we're asking you here, right? Even if – even if your theory that GEICO has it in for your client is right, it's got to be that GEICO has it in for your client as a result of your client's provision of medical services. Which is true. Rather than, for example, as a result of the various other issues that GEICO has relied on in going after your client. But if you read their complaint in the RICO action, they're not just going after the billing. Billing is one part of it. They're going after his medical treatment of the patients, trigger point injections, this is an example, things of that nature. But they're going after whether or not they are properly submitted for no-fault coverage, not – they're not saying that there's something objectionable about providing trigger point. They're saying in his – in the context of his treatment of his patients, there is. Yes, they do, Judge. And they say that – and they brought – this issue has come before OPMC and he's been exonerated in those cases. But they continue to file these false complaints. There's a false affidavit that I could get into, Judge, as well. My time is extremely limited. I see where the Court is. So why is it plausible that GEICO is actually not concerned about the billing practices but, in fact, wants to stop all these doctors from treating patients? Why would that be? Why would they want – because they have a – why would they want to stop them from treating patients? Because it lessens the – their – this Court – I'm sorry, not this Court. The Eastern – Judge Block stated a – all of the – his collections on the GEICO matters at the beginning of this case, based upon, at least in part, on this submitting a false affidavit, and – which we proved to be false because we deposed the person thereafter. And she denied –  But I understand. I suppose that's right, that if you stop all provision of medical care, maybe people are still paying insurance premiums, but the insurer never has to pay out for anything. And they might not be able to – Because you have – I suppose there is a profit motive there, but you would agree that they have a legitimate interest in making sure that the insurance claims are lawful, right? So the question is, you know, what makes it plausible that instead of being concerned about unlawful billing practices, they actually want to stop lawful provision of medical care? And the statute doesn't say lawfully provided, right? It says lawfully provided medical care.  So if they have a plausible claim that it's unlawfully provided, then it wouldn't be beyond – Well, we don't believe they do, but even if they – But that's what I'm saying. But why is my case – But why is my case – So, like, they make out a case that the reason for liability is because it's not lawfully provided because it's in violation of the policy and the coverage and all of that, and it's fraudulent. And so why is it implausible that that's really what they want, as opposed to shutting down the medical care itself? Then I think what the proper course of action would have been, from what Your Honor's saying, is to have stayed this case until the outcome of the RICO action, because otherwise my statute of limitations may run and I may not have a claim ever, even though the evidence at trial and the RICO action, because I'm – At this stage, right, so you filed a complaint, so the question is whether your allegations are plausible, not whether you prevail. So the question is, is it plausible that GEICO isn't really interested in the billing practices, but is – And it is. – willing to stop the medical care? And I'm asking, sort of, why? Why would they do that? What are the facts that shows that? What are the facts that – Well, if it's equally possible – I guess the facts – Between wanting to stop the billing practices and wanting to stop medical care, that doesn't raise it to the level of plausibility. So it has to be plausible that that's what GEICO's aim is, is to stop the provision of medical care simply. It's the second RICO action in three years that they've targeted this doctor. It's – they ERO him on a regular basis, over 50 EROs on his patients. They're going beyond, you know, the – they subpoena every provider that he's ever had any association with, anybody with a doctor. I think you can imagine any attorney was submitted – Aren't all those facts equally consistent with them going after him for billing practices? No, because – Or why? Because, Judge, the complaint is not limited to billing practices. It's not. It's limited to his medical practice. They go on to treatment – predetermined protocols and things of that nature, which we adamantly deny. And they do this in every case. Judge, I think GEICO, if they were to look at the Eastern District statistics, I think they file a case at least once a week on these – on these medical providers, not against Clark Medical Providers, but just in general. It's become almost like a claims processing center in a way. And that's the issue, is they do have an incentive to do this. And if this Court sustains and doesn't allow me to at least amend my pleadings, I will be – this case may be beyond – by the time it gets to trial, I'll be beyond the statute of limitations. And if the evidence shows that they were in bad faith and that every – all the analogies that Your Honor had set forth earlier come to fruition, that we actually can show that these – they did unlawfully interfere, I will be barred at that point. But why would – I mean, again, I'm trying to disentangle your potentially valid defenses to the RICO actions and maybe even your valid claims, who knows, to claims that they're pursuing you in bad faith, and your invocation of this statute as a shield. And I'm – so even if we accept that GEICO is targeting your client in bad faith with litigation in a way that interferes with your client's ability to practice medicine, how is it plausible that that's a result of your client's lawful provision of medical services or provision of lawful medical services, protective medical services, rather than concerns? And I understand it's not just billing. I'm using billing as a stand-in for the way the practice is structured, whether there's unlawful referral practices underlying it, whether there's non-physician ownership, all of the above. Why is it plausible that the provision of medical services rather than the others is what's resulted in this litigation? Because the provision of medical services is what GEICO has to pay for, ultimately, and they have an incentive to not pay for it because, one, it reaches – one, it keeps their claims down, their litigation costs down. And also, it also – the bodily injury claims go down as well because people can't treat and meet the threshold. So you're talking about there's sort of general motives and so on, but the statute does focus on the allegations in a lawsuit, right? So a claim of unlawful interference with protective rights is based on somebody bringing in a lawsuit. See, that's where I disagree. Judged from the allegations in the lawsuit, whether they're targeting the provision of medical services or they're targeting something else that's unlawful, and that's what allows you to sit a claim, the nature of the lawsuit that is the basis for a claim of unlawful interference with protected rights. Would be the triggering event that allows –  And the idea is you sit a claim if the allegations are trying to impose liability for the provision of medical care as opposed to something else that's unlawful. I guess I'm sorry, Judge. I guess I'm not understanding. I thought I had answered that question earlier. So I understand that you thought you answered it earlier, but what I'm saying is the way you answered it was, well, the real motivation behind what they're doing is they're bringing these claims about billing practices and RICO and whatever because they really want to stop the provision of medical care. Yes. But regardless of what their motive is, if the lawsuit that they're bringing is focused on the billing practices and other unlawful practices, that is not a lawsuit that's trying to impose liability for the provision of medical care but for other things. So that's not what it is. Like if somebody is providing reproductive health services but commits a crime, like they're still – they're not immune from criminal liability just because they provide reproductive health services, right? The question is whether the lawsuit is trying to impose liability for the medical services as opposed to something else. But in that situation, Judge, you could also argue that they could simply put a provision in their lawsuit to make an allegation of illegality when their true motive is to attack. No, I agree with that. A complaint would say – would have some theory by which the provision of the health care services really was unlawful. But the question that I'm focused on is whether the liability would attach to the provision of the health care services or to something else. Why isn't that the way we should understand the statute? I think the liability under a fair reading and really plain language of the statute is the unlawful interference. And I think that's what you're asking, is what is the unlawful interference and how does it – it must, you know, sync with the damages. And what I'm – I guess my understanding of the question is that they would have to – in the underlying RICO action, there would have to be some issue of the medical issues that we have now alleged to be unlawfully interfered with to resort to the damages. And that is, I guess, the issue that the Court is – well, I don't want to use the word struggling, but I guess I think that's what your Honor means. I think that in their complaint, all of the issues of medical necessity and of treatment and the fact that those patients  So you're saying that it really is targeting the provision of medical care. I think that's the ultimate goal, is to do that and – which gives them the benefit of not having to pay. And because this statute allows for a doctor to sue under civil rights action, it's entitled – we were entitled to a liberal reading of it, and we should have at least been able to amend it. Can I just clarify, though, because you talk a lot about unlawful interference, which is a defined term, right? And it doesn't mean something that interferes with your practice of medicine, even if that – even something that's intended to interfere with your practice of medicine. Unlawful interference is defined with you've exercised your right to practice medicine, and that's resulted in litigation against you. Which is, we think, is what happened here. That's – we've exercised – he's exercised his right to treat his patients in a certain community. They have to pay more than they want to, and therefore, they've brought this lawsuit for the second time. And inundating him and his patients with all these unnecessary UOs, we also have it now compounded with on the record. And I could cite the ECF docs for – where this person has the – this Melanie Kay has submitted apparently an affidavit. She's settled out of the case. And then we deposed her, and it turns out that the affidavit was completely false. And it was used – and it got – Judge Block got a letter from Geico's counsel, and Judge Bulsar got a letter from Geico's counsel that, oh, we have this new affidavit here, and she says that she's a partner in the doctor's practice. Deposed her. The exact opposite was what was said under oath. And they're utilizing these cases to prevent these doctors, to get them out of business, and they've succeeded here. He had to close practice. He's closed offices because of this. Let's assume for a minute, which I'm not saying we are, but that we agree with the district court's interpretation of the statute. Why would amendment not be futile? Because my – anyone – my client – endocrine treatment includes – and I didn't get a chance to get into this – includes the treatment of diabetes. Many patients that my client sees have auto accidents that are diabetic. Those patients would even – I don't agree at all with the Court's decision here. But if it is limited to endocrine and reproductive health care, which there's a lot of argument that it's not because the original – it wasn't in the original – okay. My client has patients who have been affected by all of this, and they do meet that definition, and he would like to amend. And we never got that opportunity. And it's a civil rights action. Okay. So my second question is, is this a good case for certification to the New York Court of Appeals? I think it is. After reading the – after reading the Geico v. Maisenberg decision, I feel like it plays into it, what they said there, because it's very similar to – I mean, most of the RICO actions are. I mean, the licensing issues and the – I mean, and I have the paragraph set forth, and I'm kind of long-winded here, but for where they allege licensing violations against my doctor in this case. Very similar to the Maisenberg and to the other cases. So that's why. Thank you very much, Mr. Amin. Thank you, Judge. This is your time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Mr. Krennic. Good morning. May it please the Court. My name is Evan Krennic, and I'm here today on behalf of Geico. I will get into some of the – what I think are irrelevant, no-fault issues in a few minutes, but I think the central issue here is that this litigation has nothing to do with Civil Rights Law 70B. It is an absolutely unreasonable and absurd interpretation of this important civil rights statute to apply it to a no-fault doctor who treats audible accident injury patients and is embroiled in a dispute with an insurance carrier about the billing for those patients. That has nothing to do with 70B. And the idea that this is anything less than an absurd result, I think was – If you think that actually Geico is doing this in order to prevent him from treating patients, wouldn't that mean that it is interference with the provision of health care? Not as intended by Section 70B. It might be a defense to the lawsuit. It might be a defense to the RICO case. It might create some sort of common law claims. There's lots of facts there that plaintiffs can argue. Is that just because he's not providing reproductive health services? Yes. But if you were providing reproductive health services and you still went after him with the same claims of insurance fraud, you're saying then he would be able to sit a claim? But automobile accident victims don't need reproductive health care services. That's the complete anomaly here. Well, so my favorite argument is whether as how to interpret the statute and how broad or how limited it is and how much we try to use canons of construction like avoiding absurd results. So I'm going to ask the same question I ended with him. Is this a case that is good for certification? Well, it certainly would satisfy some of the standards of certification, but it is not a statute that's been interpreted by any state court, so there is no uncertainty in the state courts how it's been interpreted, which is usually one of the factors this court looks into where there's unsettled precedent. What is the absence of information an uncertainty, being that no one has ruled on it and should we be the first? Well, somebody has to be the first. I'm not sure the New York Court of Appeals would interpret their own statute. So, yes, certification would not be inappropriate. So your position is it would not be improper for us to do so, but you don't think we have to because you think New York gives us enough? Because I think it's clear. I think that's right. It's certainly appropriate to certify, but I think it's – I'm sorry, but I think the application of these facts to the statute does not need certification. But you think it's clear because you think included but not limited to means it has to be something like what follows. Well, I think it's clear because the intent behind the legislation, which you can get to under your canons of construction, under the New York Court of Appeals canons of construction, when you – to avoid an absurd result. And once you get into the legislative – I think that what you just described seems to me also to be an absurd result because you said even if he's – if he were providing reproductive health services and you sued him for insurance fraud, that he would have a claim. So it seems that if you're within the scope of medical care, actually you're kind of immune from all sorts of unlawful conduct that might be incidental to the provision of medical care. Well, my comment was that he's not – has not alleged and is not providing reproductive health care of the type that was fortunately protected by the statute. I understand, but you're trying to avoid an absurd result. And so even if he were providing reproductive health care, it seems like it's still an absurd result to say that he'd be able to have a counterclaim against the suit for insurance fraud. Well, I suppose if he was providing abortions to patients and submitted that billing to GEICO and GEICO improperly and for bad reasons denied that billing, if the allegation taken as true, then maybe one could squeeze those facts into the statute. Not just denied the billing but turned around and sued him. Pardon me? It wouldn't be just denying the billing. They'd have to affirmatively sue him as a result of the billing. They would have to bring a lawsuit to recover payments they made to him that they believe were improperly made based on fraudulent billing. Where a doctor is performing an abortion, but then after performing the abortion he gratuitously cuts off the patient's arm and the patient sues the doctor not for the abortion but for the gratuitous injury. Right. But the complaint mentions that he did it in the course of providing reproductive health services. You're saying that doctor could turn and sue her for interference with protected health care? No, of course not. No, I don't think they can. There has to be a connection. So I would think the reason why he couldn't is because the lawsuit is imposing liability not for the provision of the reproductive health services, but for the separate injury that is not lawfully provided medical care. Correct. So why wouldn't it work also that if you were suing a doctor not to impose liability for the provision of the health care but for fraudulent billing and fraudulent billing practices, that's similar in that you're not trying to impose liability for the provision of the health care itself? Well, that's correct. That's why this square peg doesn't fit. So you don't agree that even if he were providing reproductive health services, you couldn't bring an insurance fraud claim? I'm sorry? Before you said that maybe if he was providing reproductive health services, he might be able to sue you back if you were suing over insurance fraud. But now you're saying? No, I think there has to be a connection between the medical activity here and the allegation of interference. Again, I go back to the mental gymnastics we're trying to cobble onto a statute which was enacted for a very specific and important reason. But to be very clear, though, part of the issue is there was an impetus, but there were also things like the bill being amended to say not limited to language. I mean, what I'm confused about is I no longer now understand what you think the appropriate interpretation of the statute. In the very beginning, I thought you said it was limited to reproductive care and endocrinologists. I would say it's limited to that and other related activities that aren't specified there. Okay. And you think that that is true because a broader reading of that would be so broad it would lead to an absurd result. There would be no limit on how broad the statute would be. They did add, or at least the argument is made, that the bill at some point was amended to include the not limited language. So how do we both avoid the absurd result that you think we should avoid and give force to the words the not limited language? Well, I'm not seeing the legislative history that suggests that the included but not limited to was added to the bill. The bill was passed in 2022, and the purpose outlined in the sponsor's memorandum and the governor's statement about it makes it very clear that it is intended to protect the rights of individuals seeking abortion or gender-affirming care in New York. I mean, the title of the bill, the Fire Hate Act, says freedom from interference with reproductive and endocrine health adequacy and travel, exercise. Yeah, but it might have been the way the legislature accomplished that objective was to be overprotective of health care in general, right? I mean, it's not. So if they adopted language that is expansive, they're still accomplishing the purpose, but there's like a very large prophylactic zone of protection. So it's not impossible for the legislature to adopt a bill that provides more expansive protection than the specific thing they're trying to protect, right? Not impossible, but no reasonable reading of the legislative history would support that. There's no mention that we should enact a statute to protect doctors beyond the scope of the activities we're talking about. There's no hue and cry that doctors are being challenged for all their medical activity, and we need to give them this civil rights statute to protect doctors from these types of activities. There's not a whisper of that in the legislative history. Okay, you're focused on that, but it sounds like you also agree that if the lawsuit that gives rise to the interference claim is not trying to impose liability for the actual provision of health care, like that can't state a claim, right? I think you're right. I think the billing—I mean the provision of medical care only becomes a concern for Geico when they submit fraudulent bills. So Geico's lawsuit is predicated on the fraudulent bill. Okay, but here Clark alleges that actually Geico—it's all a sham. Geico doesn't care about the fraudulent bills. They really just want to stop him from providing medical care simply and to anybody. Why is that implausible? It's implausible because that would open a Pandora's box of every single medical practitioner who gets sued by anybody for anything to make an allegation that they're really just suing me, not because of what the lawsuit says or not because of the billing, because they really just want to interfere with my right to provide medicine. And that would be an open-ended invitation for every medical doctor who was ever sued in New York to bring a civil rights lawsuit against whoever sues them. And that, I believe, is just an interpretation. The statute does not withstand any reasonable scrutiny. And then you use that to get into the legislative history. It becomes clear as day that that is not what the statute is intended to cover. And there is a pending amendment to the statute. It's mentioned in the brief, passed by the Assembly, passed by the Senate, sitting on Governor Hochul's desk. Which way does that cut? I mean, that means that actually they think the original language they enacted is more expansive than focusing just on reproductive health care, right? I think it cuts more likely in that it clarifies the original legislative intent. Again, the context of this, which is more inferential than maybe factual, is that the Dobbs draft opinion was released. The issue of abortion rights was coming back to the states. Legislatures across the country were enacting laws, some to restrict, some to allow, to protect the rights or to protect the restrictions that their legislatures thought was fit. This state legislator jumped into this, drafted this statute. Perhaps not with the precision that we would have liked. If there were an interpretation of the statute that didn't protect reproductive health services, that can't possibly be allowed because it seems pretty obvious that what the legislature wanted to protect was reproductive health services. But if the straightforward language is more protective of things beyond reproductive health services, then it is accomplishing what the legislature wants. It's just being particularly aggressive in accomplishing it by being even more expansive. So it's not obvious that just because that was their purpose, they couldn't have drafted a broader statute. But that interpretation would read a lot of the statute. If I have more time, I'm sure I will.  I mean, the statute, what Plaintiff would like the statute is to stop after it says, the rights specifically protected under this action shall include lawfully provided medical care. Plaintiff would like it to stop right there. It didn't stop right there. There's a lot of words after that. Well, you'd like to stop with include. You'd like including and then to cross out without limitation. Right. I would like that, but it doesn't say that. But then it goes on to talk about medical services, which are related to the human reproductive system. I mean, look, if the statute just stopped at lawfully provided medical care, then the statute would be very different because it also includes, in addition to medical care, all medical, surgical, counseling, or referral services. So referral services are not themselves medical care. So that part of the statute serves a different purpose. So he's not reading that out of the statute. The entire debate is over the phrase including but not limited to reproductive and or endocrine health care. And you like the word including but don't like the words but not limited to. And he really likes the words but not limited to. So, actually, you're reading out of the statute but not limited to, right? Well, I'm not. I'm saying that. What you're saying is the statute should say, it's very specific that the section should include lawfully provided medical care limited to reproductive and or endocrine health care. Well, we all rewrite the statute to serve our purposes. But my point is that when you read the statute as a whole, it's at best imprecise and unclear as to where the limits are. Because the medical services are somehow different than medical care. Some include it.  Which is why I'm saying. That's why we're going to let it. The important question, the import of the phrase lawfully provided, if, in fact, there is a plausible allegation that he's doing something else that's unlawful and he's not targeting the person that's not targeting or the proponent of the original lawsuit is not targeting the medical care. Correct. And then sort of the allegations against the person involved, does that mean that as long as you mention the provision of health care, that's enough? Or does it mean that the lawsuit seeks to impose liability for the provision of health care? So aren't those the more key phrases about what we think are the limitations of the statute? I think the latter is a better interpretation. We made these arguments before Judge Block. He didn't reach them because he found the interpretation offered by the plaintiff was not consistent with his understanding of the statute. So we raised alternative arguments along these lines before Judge Block, which he didn't reach. So alternatively, if the court doesn't believe Judge Block's interpretation of the language is correct, which we strongly disagree, there are other arguments that dismiss this complaint that were pending before him that she didn't reach, among them the question of standing, the connection between the billing and actually the lawfully protected medical care. Much of that was presented to him. So the court has that understanding. I'd like to just for one minute just to go back over some of the misstatements of law about the no-fault case, which I don't think is relevant here. That's the Mazenberg case. The Mazenberg case and the whole idea that the statute and the abuse here. The Mazenberg case, as the Court is familiar with it as it came out of this Court, is limited to the issue whether a court, the carrier, can deny services because there's a professional licensing violation, i.e. kickbacks or other types of professional liability standards under the public health law. It reaffirms that a carrier can deny claims when a doctor has ceded control of the medical facility to lay people and that kickbacks can be some evidence of that secession of control. So everything in this complaint, which relies on kickbacks, is perfectly relevant to talk about the lack of control that Dr. Clark does not have as a medical professor and violates the corporate practice of medicine, along with the failure to have individualized treatment and all sorts of other fraudulent conduct which leads to deceptive and fraudulent bills being submitted to carriers. So Mazenberg does not impact the RICO case, and so it doesn't impact this case. This case is not about the RICO case. Defenses to the RICO case, that's being litigated. Let them litigate those defenses there. That is not about a civil rights violation that using the statute as a sword as a separate means as opposed to a defense in the RICO case. I will tell you that the counterclaims in the RICO case were dismissed by Judge Block as they've been dismissed by many other courts in the Eastern District in response to Geico's, Skyco and other carriers' claims like this. So this is a form-shopping endeavor. I can't get these claims adjudicated before Judge Block because they have no merit. He dismissed them. Let me take this civil rights statute. But being a form-shopping, can I just ask, so if this case was originally filed in the Bronx, why was it removed to the Eastern District? It was removed to the Southern District and then transferred to the Eastern District. So it was? Yes. Why was that? Why was it? Because somebody determined it was related to the RICO case? I wasn't involved at that time, but that's my understanding. Okay. Can you, you mentioned that a bill that would amend the language is on the governor's desk. Yes. I'm assuming you don't have any insight into how long it's been there or whether it's going to be signed. But would that be a, somebody asked you earlier about whether this was a good case for certification. Would that be a reason not to certify since we'd be interpreting a statute that was imminently becoming a dead letter? I don't know if the governor's going to sign it. I have no information about that. She hasn't called me to ask me what I think about it. So I don't know if she's going to sign it or not. Obviously, if she signs it, then the applicability of the statute, as we're talking here, will have a limited impact. But I don't know that she's going to. It's not, the statute, you should know, is a very large bill. It makes upwards of 18 separate amendments to a variety of statutes, this section being one of them. But it involves many amendments all on the concept of protecting medical doctors and patients from procuring reproductive services and other. It makes clear that gender-affirming care is included. It's not just an amendment to this statute. To clarify, this particular statute, it's got a broader swath than that. And I just don't know if the governor's going to sign it or not. She has until December 31st, as I understand the legislative rules, to take some action on it. But I don't know what's going to happen here. But it does make very clear that legally protective health activity in this section is defined by two other terms that are defined, reproductive health services care and gender-affirming care, both of which are defined terms. So it would resolve any ambiguity by the broadness of the term, any lawfully medical care here, among other statutes. So we believe the statute should be interpreted and consistent with its spirit, with its purpose, as clearly identified in the legislative history. We think this Court's precedents, and perhaps more importantly, the New York Court of Appeals precedents interpreting state statutes, require the Court to avoid what is an unjust and unreasonable result. And we think that requires here an affirmation of Judge Block's rules. Okay. Thank you very much, Mr. Kornick. We'll turn it back to Mr. Mead on rebuttal. Yes, Your Honor. Thank you. I just wanted to point out in the brief, it's at page 21, where the original language in the bill for the statute was to obtain medical care whether involving reproductive or endocrine health. That didn't become law. They then — there was debate regarding — Like your colleague, I had a hard time finding that. How would I find that? I didn't see it on the official website that the amendment wasn't listed. It's in the bill's text. I'm sorry, Your Honor. Okay. SB9039, May 4th, 2022. We'll take a look again. So because originally they had it in there, I'm sorry, as just being endocrine and reproductive care, and then it was amended, our position is there was a legislative compromise. They couldn't get it passed by having it just being those two entities. And the new statute still says endocrine. If we're going to look at this kind of history about, like, the original bill and the amendment and so on, why wouldn't we also look at all of the statements about what they really were trying to protect and say, well, the way to read that is to say they didn't want to limit it to a precise definition of reproductive health services, but they wanted, you know, things to be related to that. So, Judge, I want to make sure I'm not — I'm not withdrawing my plain language argument by making this. I'm just responding to this argument. I think the court — I think the plain language allows us a cause of action. The amendment resolves it. It resolves it. But if we look at this history of amendment, then we might also be looking at all of the history about the purpose and what they were really trying to get at. And that might be a reason for certification, Judge. I don't know. I think — I'm just reading also just in response to the Geico v. Mazin, but not applying. If you look at page 9 of the decision, the court speaks about the Geico's proposed interpretation would have a perverse effect on delaying payments and incentivizing litigation based on the insurance unilateral determination that a provider violated. The Geico's proposed interpretation of what? Violating one of 50 distinct categories of professional misconduct. So — So what does that have to do with this statute? Well, because they're alleging professional misconduct by Dr. Clark throughout their complaint. And — But that's a defense to the RICO action, but that's not — That's not about what the reach of this statute, right? Well, okay. Fair enough, Judge. Fair enough. I don't have anything further to ask. Can you answer, Judge, the question that a colleague pointed about what we should do with a new bill on the governor's desk? Judge, as far as the timing of it, it's been there for quite a while since they've raised it. And my reply brief, I did a Lexis search, and it said it has a 22 percent chance of being signed. I don't know if that's correct or not, but that's what Lexis has, as I said in the brief. Judge, I think that — I don't think — well, I think General Construction Law 94 would apply. It doesn't — even if it is amended. We filed this case prior to it being amended. It would not make this case dead by — for Dr. Clark.  So if the statute were amended, you would say, well, that makes our plain language argument even stronger because the legislature had to amend it in order to avoid the plain meaning of — I think that's what we — — the statute, which extends beyond simple reproductive health care. I feel as if I had said something like that in my reply brief. Yeah. Okay. Thank you very much, Mr. Rameed. Thank you, Your Honor. The case is submitted.